440 So.2d 683 (1983)
William J. McCOMBES, Appellant,
v.
Kay L. McCOMBES, Appellee.
No. AQ-121.
District Court of Appeal of Florida, First District.
November 23, 1983.
*684 Joel M. Cohen, Pensacola, for appellant.
No Appearance for appellee.
MILLS, Judge.
In this appeal from the contempt order entered against him below, the former husband contends that he was not subject to being held in contempt by the trial court and, alternatively, that the trial court failed to make sufficient findings on the issue of his ability to pay. We agree with this latter contention and vacate the order of contempt.
The parties to this appeal were divorced on 2 November 1979. In the final judgment of dissolution, the former wife was awarded the marital home as lump sum alimony. Subsequent to the final judgment, however, the parties entered into an agreement, ratified by the trial court, whereby the former wife was to receive $21,000 as lump sum alimony in lieu of the lump sum award made in the final judgment. This $21,000 was to be paid by the former husband in biweekly installments of $150 each. The former wife filed a motion for contempt after he fell behind on these installment obligations.
In its order of contempt, the trial court found: (1) that the former husband failed to meet his obligations during the period from 1 June 1981 through 31 December 1981; (2) that he had the ability to pay during this time period; (3) that for this period he was in arrears in the amount of $1,500; and (4) that he had no ability to pay from 31 December through the date of the hearing on 7 October 1982. The trial court found the former husband to be in willful contempt for failure to pay the $1,500 and ordered his incarceration for 30 days unless he payed the arrearage within six months of the hearing date.
The former husband contends that the post-judgment agreement which the parties entered into was in fact a property settlement agreement which is not enforceable by contempt. We agree that property settlement agreements are not enforceable by contempt. Howell v. Howell, 207 So.2d 507 (Fla. 2d DCA 1968); Carlin v. Carlin, 310 So.2d 403 (Fla. 4th DCA 1975). However, we cannot agree that this post-judgment agreement was a property settlement agreement.
The trial court here made an award of the marital home to the former wife as lump sum alimony. The post-judgment agreement merely changed the form of that award, substituting an award of $21,000, payable in installments, for the award of the marital home. The award of lump sum alimony was not thereby converted into a "property settlement agreement." Thus, the trial court could properly enforce its award of lump sum alimony by way of a contempt proceeding.
However, the contempt order here is defective because the trial court failed to make an affirmative finding that the former husband had the present ability to pay and willfully refused to do so. Faircloth v. Faircloth, 339 So.2d 650 (Fla. 1976); Ponder v. Ponder, 438 So.2d 541 (Fla. 1st DCA 1983). A finding that the contemnor formerly had the ability to pay is insufficient.
Accordingly, the order of contempt is vacated.
*685 SHIVERS, J., concurs.
ZEHMER, J., concurs in part and dissents in part with opinion.
ZEHMER, Judge, concurring in part, dissenting in part.
I fully concur in the majority opinion that the order of contempt must be reversed and vacated because of the trial court's failure to find that the husband had the ability to pay. I dissent from the majority's conclusion that the provision for lump-sum alimony in the postjudgment agreement is enforceable by civil contempt. The majority has, in my view, misconceived the correct rule of law applicable to this latter issue and has failed to apply the correct rule of law.
The majority opinion is based in part on the erroneous assumption that the award of the marital home as lump-sum alimony was not for purposes of equitable distribution of marital property but as alimony in the nature of support and, thus, enforceable by contempt. It is perfectly clear that an award of the marital home as "lump-sum" alimony can legally effect an equitable property distribution.[1] The final judgment made explicit support provisions requiring the husband to pay rehabilitative alimony and child support, and reserved jurisdiction "to award either further temporary or permanent alimony as may be appropriate." The final judgment also made explicit provisions for property settlement; it awarded the marital home to the wife, provided that the adjacent vacant lot should be held by the parties "as a joint tenancy," and declined to award the wife any interest in certain corporate stock owned by the husband. Contrary to the majority, I would treat the award of the home to the wife as equitable property distribution.
Regardless of the purpose for awarding the marital home as lump-sum alimony, however, the postjudgment agreement must be treated under the law as a final property settlement agreement not enforceable by contempt. There is no basis in law or fact for the conclusion that the husband's postjudgment agreement to pay $21,000 lump-sum alimony in installments "merely changed the form" of the earlier award and "was not thereby converted into a `property settlement agreement,'" as stated in the majority opinion at page 3. No legal authority is cited to support this novel holding, and it is directly contrary to the manifest purpose of the agreement, as shown by undisputed evidence in the record and applicable Florida decisions.
In a postjudgment order entered May 2, 1980, which recited that "the parties have entered into an agreement concerning the disposition of the marital home, temporary custody of the minor children of the parties, and certain marital debts of the parties," the circuit court ratified and confirmed the postjudgment agreement here involved and made it an order of the court. That agreement, dated April 3, 1980, recites that the agreement was made by the parties because the final judgment "dissolved the marriage between these parties and purported to settle their respective property interest" (emphasis supplied) and "the [w]ife was awarded the former marital home as lump-sum alimony but is finding it difficult, if not impossible, to either maintain said former marital home or to sell it." The agreement then provides, in part, that the parties have mutually agreed that:
1. In lieu of the lump sum alimony awarded in the above-referenced final decree, the Wife shall accept the sum of Twenty One Thousand Dollars ($21,000.00) as lump sum alimony. Said sum shall be paid in bi-monthly installments of One Hundred Fifty Dollars ($150.00) each on the first and fifteenth days of each month (said payment to include principle and interest), commencing the 1st day of April, 1980, for a period of forty eight (48) months, with the final payment of principle and interest then due on the forty ninth (49th) month, interest to be incurred at the annual rate of ten percent (10%). The former marital home of the parties which was awarded *686 to the Wife as lump sum alimony shall be conveyed by the Wife to the Husband... .
* * * * * *

As security for the indebtedness, the Husband agrees to execute a mortgage concurrent with the signing of the deed, encumbering for said indebtedness the property conveyed herewith and in addition, all and singular his stock contained in Scuby Subs, Incorporated. The indebtedness provided for herein may be paid off at any time without penalty and all collateral shall be released.

* * * * * *
3. Except as contained herein, each party hereby irrevocably waives any right, claim or alimony, each from the other. (emphasis supplied.)
What could be a more classic property settlement agreement? The husband, having previously conveyed the marital home to the wife pursuant to the final judgment of dissolution, agreed to pay her $21,000 for the home and release of her marital rights to any further alimony, the stated sum to be evidenced by a note secured by the home and other property and payable, with interest, in bimonthly installments. Unlike traditional alimony provisions for support, the husband's obligation to make these periodic payments does not terminate upon his or the wife's death; neither does it terminate upon the wife's remarriage. The court did not retain jurisdiction to modify or amend future alimony provisions, lump-sum or otherwise. In addition, the parties irrevocably waived and terminated any other right or claim to further alimony  a well-recognized expression settling marital property rights.[2] The agreement clearly created a fixed debt evidenced by a note payable without qualification or condition in exchange for complete settlement of the wife's marital property rights.
Not only does the document itself clearly evidence the parties intent to make a final "property settlement agreement," but the wife so testified and the trial judge so characterized it. The wife, in answer to questions about the postjudgment agreement, testified:
Q. And in that agreement, you agreed to take this mortgage and note in lieu of lump sum alimony; is that right, as part of your property settlement?
A. Yes, and part of it was supposed to be fifty-two shares of the business, also I believe if he failed to make payment.
Q. All right. Well, this was your property settlement then or part of your property settlement with Mr. McCombs; is that right?
A. Yes.
Consistent with the wife's testimony, the trial judge also recognized that this was a property settlement agreement, but in disregard thereof impermissibly attempted to import into the postjudgment agreement the enforcement provisions from the original final judgment:
THE COURT: I think I'm going to have to consider it, it's a property settlement agreement, of course, but in the terms of it the former marital home which was awarded the wife as lump sum alimony shall be conveyed by the wife to the husband which was in, exchanging the alimony over to the home, but it still says in the final judgment that it is to be complied with in all respects. (emphasis supplied.)
In Underwood v. Underwood, supra, the Court stated, 64 So.2d at 288:
At the very outset we dispose of the legal effect of the use of the word `alimony' in the agreement and decree. It is not what it is called but what it is that fixes its legal status. It is the substance and not the form which is controlling. In the case of International Trust Co. v. Liebhardt, 111 Colo. 208, 139 P.2d 264, 147 A.L.R. 700, the court held that the use of the word alimony was not conclusive and that it was substance and not form which *687 guided the court. So far as agreements of the kind under consideration is concerned, where periodic payments are to be made the wife for the period of her life and is not limited to the joint lives of the parties, the legal effect of such payments are that they constitute property settlements and not alimony. By its very nature, alimony is limited to the lifetime of the husband. See Spear v. Spear, 158 Md. 672, 149 A. 468, from which we quote with approval in Vance v. Vance, supra; Emerson v. Emerson, 120 Md. 584, 87 A. 1033; Newbold v. Newbold, 133 Md. 170, 104 A. 366; Dickey v. Dickey, 154 Md. 675, 141 A. 387, 58 A.L.R. 634; North v. North, 339 Mo. 1226, 100 S.W.2d 582, 109 A.L.R. 1061.
The plain language of the agreement itself is wholly inconsistent with the idea that the financial arrangements are alimony.
To like effect is Howell v. Howell, 164 So.2d 231 (Fla. 2d DCA 1964).
Accordingly, use of the term "lump-sum alimony" in the postjudgment agreement does not negate the parties' creation of a legally valid and binding property settlement. Alimony, in the true sense, means "nourishment" and "sustenance." Fort v. Fort, 90 So.2d 313, 315 (Fla. 1956). Because of public necessity that dependents be supported, the contempt power of the court may be used in this sense only to enforce payment of alimony. Cobb v. Cobb, 399 So.2d 479 (Fla. 1st DCA 1981). The husband's agreement to pay a lump sum in periodic payments in exchange for the wife's relinquishment of valuable property rights such as support alimony are usually treated as a property settlement even though called "alimony" in the agreement. Underwood v. Underwood, 64 So.2d 281 (Fla. 1953). Such a property settlement is not enforceable by contempt. Carlin v. Carlin, 310 So.2d 403 (Fla. 4th DCA 1975); Burke v. Burke, 336 So.2d 1237, 1238 (Fla. 4th DCA 1976). To do so violates the constitutional prohibition that "no person shall be imprisoned for debt." Fla. Const., Art. 1, § 11; Burke v. Burke, supra.
Believing that the majority has misconceived the applicable rules of law and reached a legal conclusion in conflict with the cited cases on the same question of law, I dissent.
NOTES
[1] Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
[2] Underwood v. Underwood, 64 So.2d 281 (Fla. 1953); Howell v. Howell, 164 So.2d 231 (Fla. 2d DCA 1964).