552 So.2d 237 (1989)
C. Eugene McConnell, Appellant,
v.
Barbara A. McConnell, Appellee.
No. BS-185.
District Court of Appeal of Florida, First District.
October 31, 1989.
Rehearing Denied December 5, 1989.
*238 Everett P. Anderson, Tallahassee, for appellant.
Roy T. Rhodes, Tallahassee, for appellee.
PER CURIAM.
Appellant, C. Eugene McConnell, appeals the denial of his petition for reduction of alimony and the entry of an order finding him in contempt. He contends that the legal test to determine whether his career move justifies a reduction in alimony payments is "good faith." He also argues that the trial court erred by finding him in contempt without finding he had the present ability to pay or that he willfully refused to pay court-ordered obligations. We reverse.
The trial court entered a final judgment of dissolution incorporating a settlement agreement on February 8, 1984, and dissolving the parties' 34-year marriage. The agreement provided the wife with furnishings, a home in St. Petersburg, a car, $5,000, stock, a mortgage generating weekly income of $56.29 until 1993, and $200 weekly permanent alimony. Appellant received a home in Tallahassee, a T.V., and furnishings.
When the parties signed the separation agreement on August 9, 1983, the 59-year-old appellant had a net worth of $25,000 and earned $49,000 annually as a printing production manager. Following dissolution, appellee earned $160 weekly while living in St. Petersburg, and appellant received a raise earning $65,000 annually. In June 1985, he was promoted to president of the printing company earning $80,000 annually. During the course of his promotions, appellant sold his home in Tallahassee and purchased a new condominium for $135,000 with a down payment of $32,000. This purchase involved a mortgage payment in excess of $1,000 monthly. Appellant was involuntarily terminated from his employment in August 1985, because of an argument with the printing house owner.
After termination, appellant moved to Ocala to live with his fiance despite a dearth of job opportunities for a man of his skills and qualifications in that area. Because of his age, history of personal conflicts with former employers, the job's high stress, his desire to be his own boss, and his "desire to find personal happiness," he did not seek reemployment commensurate with his abilities in any other opportune locality. Appellant attempted to become self-employed, but when that failed he signed an independent contractor agreement with his fiance's corporation to handle her printing brokerage business.
The appellant began to make adjustments in his financial arrangements since his earnings were reduced to a $250 weekly draw during the brokerage's infancy. This *239 income was repayable once sufficient business was established. Although his income was reduced, his expenses were also reduced as he lived rent free with his fiance. Because of the difficulty in making his $1000 monthly mortgage payment while paying weekly alimony, he placed the condominium on the market. He received, but did not accept, two offers. In April 1986, he began to miss the weekly alimony payments payable to appellee.
The trial court found that appellant did not sell his home in Tallahassee, purchase the condominium, move to Ocala, and take a lower paying job to deliberately avoid his court approved obligation to pay alimony to appellee but, instead, that he opted to seek another lifestyle. Furthermore, the court found that appellant failed to make a bona fide effort to explore the job market in an area accommodative to his expertise, talent, and abilities. In view of these findings, the court, nevertheless, attributed an earning capacity to appellant sufficient to meet his obligation to pay the current level of alimony and denied his petition to modify.
In a January 1987 hearing, the court considered whether the husband should be held in contempt for failure to comply with the final judgment. Testimony presented indicated appellant earned approximately $7,000 in 1986, which was normal in starting a new business, but that salary potential for a printing broker was high. Appellant testified that while printing plant supervisors earned between $18,000 and $49,000, had he applied for reemployment in his field of expertise he could have earned between $28,000 and $32,000. The court found appellant overqualified in his present position as a broker and held him in contempt.
In Fort v. Fort, 90 So.2d 313 (Fla. 1956), the husband's income was reduced when he voluntarily gave up medical employment in Atlanta to establish a medical practice in Jacksonville. Although the husband would have had to sell capital assets to keep up with alimony payments, the trial court denied his petition for reduction because his changed financial position was voluntary. The supreme court quashed the court's order, stating:
Thus, where the parties have simply agreed on the amount of monthly payments to be made by the husband for the support of the wife, in satisfaction of the husband's common law obligation of support, it would not appear unreasonable to require the wife to accept a lesser sum, temporarily, during such time as her former husband is establishing himself in a new type of employment, entered into in good faith, without requiring him to dissipate his capital assets to meet the monthly support obligation to his former wife. Certainly, if the marital status had continued, the husband could reasonably expect the wife to adjust her financial needs to the husband's reduced income, without delving into savings or converting capital assets into cash to maintain their former standard of living. And it would appear equally reasonable to require a divorced wife to do the same.
90 So.2d at 315. The Fort case establishes a "good faith" test for reducing support alimony when the paying ex-spouse has changed employment and suffered a reduction in income. As we read that decision, the good faith test must be applied regardless of the paying ex-spouse's motivation and voluntariness in taking such action. When the former spouse reduced his or her income to avoid compliance with the alimony support obligations imposed by the court order and is not currently acting in good faith to increase earnings back to the previous level, that spouse fails the good faith test.
Although the trial court is afforded wide discretion in considering a petition to modify support alimony payments, particularly when such payments are based on an agreement between the parties incorporated in the final judgment, we conclude that the instant case must be reversed on the authority of Fort. The trial court did not properly apply the good faith test set forth in that decision, as indicated by the following factors shown by the record: (1) the husband was involuntarily fired from his high-income job; (2) he had only held the job for three months; (3) his income was *240 artificially high because of his relationship with the owner; (4) the husband is 59 years old and nearing retirement; (5) his prospects for finding a similar position and salary in the printing production field are speculative; (6) moving from Ocala would have disastrous effects on his personal and professional life and would be contrary to the best interests of the ex-wife; and (7) the trial court has already determined that the husband's move to Ocala was not motivated by a desire to harm the ex-wife or avoid his court-ordered alimony obligations. Since the trial court reached a finding of "good faith" regarding the reduction of income based on competent substantial evidence and did not find that appellant was intentionally avoiding his obligations under the judgment, and since the incorporated agreement involves the award of support alimony (as distinguished from a distribution of marital assets) and is modifiable upon a showing of material change in circumstances, we reverse the order denying modification and remand for further consideration. Our finding on this issue permits entry of an order temporarily reducing alimony payments during such time as is necessary for the appellant to establish himself in his new career.
We also reverse the order finding appellant in contempt. The order lacks the requisite findings by the trial court supported by competent, substantial evidence that appellant (1) presently had the ability to comply with its contempt order and willfully refused to do so, or (2) that appellant previously had the ability to comply, but divested himself of that ability through his own fault or neglect designed to frustrate the intent and purpose of the order. See Bowen v. Bowen, 471 So.2d 1274 (Fla. 1985); Faircloth v. Faircloth, 339 So.2d 650 (Fla. 1976); McCombes v. McCombes, 440 So.2d 683 (Fla. 1st DCA 1983); Ball v. Ball, 440 So.2d 677 (Fla. 1st DCA 1983); Acosta v. Acosta, 409 So.2d 196 (Fla. 3d DCA 1982).
REVERSED and REMANDED.
THOMPSON and ZEHMER, JJ., concur.
SHIVERS, C.J., dissents in part and affirms in part with opinion.
SHIVERS, Chief Judge, dissenting in part and concurring in part.
I would affirm the trial court's order denying alimony reduction. I would, however, reverse the contempt order as neither the order itself nor the transcript adopted by the order contains the necessary specific finding set forth in the majority opinion.