599 So.2d 191 (1992)
James S. KINNE, Appellant,
v.
Elaine B. KINNE, Appellee.
No. 91-02593.
District Court of Appeal of Florida, Second District.
May 1, 1992.
*192 Katherine Duffy and Le Anne C. Lake of Law Offices of Duffy and Lake, Clearwater, for appellant.
Andrew J. Rodnite, Jr. of Park, Rodnite, Hammond and Ossian, P.A., Clearwater, for appellee.
LEHAN, Judge.
This is an appeal by an ex-husband from an order, entered upon his petition to modify alimony, reducing his alimony obligation to his ex-wife from $1,647.21 per month to $1,500.00 per month plus $100 per month for 60 months to apply to arrearages. He contends that the reduction was insufficient in amount and that the order improperly modified the parties' court-approved marital settlement agreement by redistributing his pension. We do not conclude that the order modified the settlement agreement, but we reverse and remand for further consideration because the trial court did not consider controlling law in arriving at the amount of the reduction.
The husband argues that the reduction in alimony was insufficient in light of the uncontradicted evidence of his substantially reduced total income, and the wife's reduced needs as a result of her own additional income, since the time of the final judgment of dissolution. The husband's income, including the unchanged amount of his pension income, was reduced from about $84,000 per year in his initial post-retirement employment to about $32,000 as a result of his new employment during the last year before the modification hearing. His age was 59 at the time of the hearing. The wife's age is not shown, but the duration of the marriage, which ended 2 1/2 years before the hearing, was over 29 1/2 years. Although the wife had not worked during the marriage, after the dissolution she had earned $5.00 per hour while working 20 hours per week at different times for periods not clearly shown by the record.
The husband also argues that in reducing the alimony by only $147.21 per month, notwithstanding the substantially larger reduction in his income, on the basis that the wife was entitled to one-half of his income under his pension as a retired FBI agent, the court improperly modified the parties' marital settlement agreement in which she had waived all claims to that pension income. The court found that the husband's pension income was over $26,000 per year. That apparently was a net figure after deducting the $3,000 annual cost of a survivorship annuity for the wife which the marital settlement agreement requires.
A husband's pension benefits which accrue during marriage, as did those in this case, may be considered to be marital property distributable to the wife. But under the admittedly valid, court-approved marital settlement agreement which had been approved in the final judgment of dissolution in this case the wife had released "any and all claims" to his pension benefits. Therefore we agree with the husband that the trial court could not properly modify the agreement by granting such a claim. See Agerskov v. Agerskov, 596 So.2d 1172 *193 (Fla. 2d DCA 1992).[1] Accordingly, we also agree that certain language in the preliminary findings in the order which indicated that pension benefits were being awarded to the wife were not well advised. Those were statements referring to "dividing the pension fund now" and saying that "[b]ecause such pension benefit rights accrued to him during the parties' marriage, the Wife is entitled by reason of the equities of the case to the equivalent of at least a 50 per cent [sic] share of said pension benefits" and that "the husband shall be ordered to now pay from the pension fund by a Qualified Domestic Relations Order, the sums herein ordered." Also, the wife made no request for a part of the pension.
Nonetheless, the order did not actually modify the agreement. After reciting the above-quoted preliminary findings, the order did not then award the wife 50 percent, or any part, of those pension benefits. (And in its above-quoted statement concerning entitlement of the wife to pension benefits the order literally said only that she was entitled "to the equivalent of" 50 percent of the pension benefits.) The order in effect only took into account the husband's income from his retirement benefits in determining the amount of the reduction in alimony.[2] Taking into account retirement income to determine the amount of alimony is permissible. See Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986); Rentz v. Rentz, 535 So.2d 613 (Fla. 2d DCA 1988). Doing so in determining in a proper case the amount of a modification of alimony that has been provided for in a marital settlement agreement is also permissible. See Brown v. Brown, 472 So.2d 873 (Fla. 2d DCA 1985). See also Petty v. Petty, 548 So.2d 793, 796 (Fla. 1st DCA 1989). In fact, the agreement in this case, by referring to the retirement benefits in the portion of the agreement entitled "Support for the Wife," appears itself to have taken those benefits into account in arriving at the agreed amount of alimony.
Yet we reverse and remand because the trial court did not consider controlling law when imputing to the husband substantially more income than he was receiving. That imputation is reflected in the rulings that "such change [the reduction in income] is not found by the Court to be a permanent change of circumstances" and that "[t]he Husband is underemployed ... [and] is otherwise capable of earning a greater income than he is reflecting."
Our conclusion that the court did not consider controlling law in that regard follows from two aspects of the apparent facts: (1) the husband's reduced income is a result of his employment in a recently begun new proprietorship of his which (a) does not appear to have been an unreasonable undertaking because it is in the area, security services, to which his life work had been devoted, and (b) has no prior record of income, in contrast to, for example, the situation in Thibodeau v. Thibodeau, 461 So.2d 1035 (Fla. 2d DCA 1985) which the wife cites; and (2) the amount of his reduced income is insufficient with which to pay what he must pay.
After paying out of his approximately $32,000 annual income (consisting of about $29,000 from his pension and about $3,000 net from his new business) various amounts for the benefit of the wife, the husband is apparently left with approximately $7,300.[3] According to his evidence, *194 his annual living expenses exceed $7,300. While there seems to be some dispute concerning the precise accuracy of those figures, that can be resolved upon remand. In any event, it appears that the order requires over 75 percent of the husband's reduced income to be paid for the benefit of the wife who is herself capable of gainful employment.
Also, the husband has no substantial capital assets to which to turn. His assets are indicated as $250 cash, the contents of his rental home and jewelry totaling $1,050 in value, and a car and a boat, each with negative equity. The marital home and its furnishings were awarded to the wife in the final judgment of dissolution pursuant to the marital settlement agreement. He testified he has had to borrow on his credit cards to pay the alimony.
In any event, the law does not require that an ex-husband necessarily sell capital assets to pay alimony. Nor is an ex-husband necessarily required to borrow money to be able to maintain a court ordered level of alimony payments. See Fort v. Fort, 90 So.2d 313 (Fla. 1956). As McConnell v. McConnell, 552 So.2d 237, 239 (Fla. 1st DCA 1989) said in that regard, quoting Fort, 90 So.2d at 315,
Thus, where the parties have simply agreed on the amount of monthly payments to be made by the husband for the support of the wife, in satisfaction of the husband's common law obligation of support, it would not appear unreasonable to require the wife to accept a lesser sum, temporarily, during such time as her former husband is establishing himself in a new type of employment, entered into in good faith, without requiring him to dissipate his capital assets to meet the monthly support obligations to his former wife.
Under that good faith test, if the ex-husband who is engaged in a new type of employment with substantially reduced income did not deliberately reduce his income to avoid compliance with his alimony obligation and is acting in good faith to increase his income back toward its previous level, his alimony obligation should be reduced to be more commensurate with his current ability to pay. See McConnell, 552 So.2d at 239. This is in recognition that
[c]ertainly, if the marital status had continued, the husband could reasonably expect the wife to adjust her financial needs to the husband's reduced income, without delving into savings or converting capital assets into cash to maintain their former standard of living. And it would appear equally reasonable to require a divorced wife to do the same.
Fort, 90 So.2d at 315, as quoted in McConnell, 552 So.2d at 239. It is also in recognition that a court is not entitled effectively to decide what an ex-husband's current employment should or should not be, absent bad faith on his part.
Bearing upon the application of that good faith test under Fort, which evidently was not argued to or considered by the trial court in this case, would be the apparently uncontradicted testimony that the husband lost a relatively high-paying, post-retirement job with a security consulting firm which he had held at the time of the agreement; that that loss was through economic circumstances and no fault of his own; and that apparently he has been unable to find a comparable job with another such firm through no fault of his own, although the record is not entirely clear concerning his efforts in that regard. Also, it appears that while the trial court recognized that the husband had not intentionally deprived himself of the ability to pay the alimony, the court seems to have decided that the husband should not have begun his proprietorship. That is, the court seems to have found the husband remiss in doing so by being, in the trial court's words, "underemployed" when, also in the trial court's words, the husband could make more money "out at McDonald's [turning] hamburgers where he can make six or $7,000 a year plus on minimum wage with no effort and no risk whereas he is now risking full-time" employment *195 in his proprietorship without substantial income. Under the good faith test we must conclude that that apparent decision of the trial court concerning the beginning of the new proprietorship was not appropriate.
Thus, based upon the record before us it appears that the husband is entitled to relief from the order which only reduced his alimony obligation to $1,500 per month, at least until his income substantially increases.
We reverse and remand for reconsideration of the petition to modify alimony in light of this opinion. Whether such reconsideration should include further testimony shall be determined by the trial court in the exercise of its sound discretion.
DANAHY, A.C.J., and PATTERSON, J., concur.
NOTES
[1] This is in contrast to the wide latitude of the courts in reviewing all aspects of marital settlement agreements for their approval in final judgments of dissolution. See Prinz v. Prinz, 596 So.2d 807 (Fla.2d DCA 1992).
[2] There is also a clause in the trial court's findings, after the above quoted statement in the order concerning entitlement of the wife to at least a 50 percent share of the pension benefits, adding "notwithstanding the purported waiver language in the Marital Agreement." That clause could add to an erroneous impression that the order awarded the wife a part of the pension plan. But that clause also was not well advised because such a waiver in a valid, court-approved marital settlement agreement regarding marital property should not be judicially disregarded. See Agerskov.
[3] Those amounts to be paid for the wife are: $1,500 per month alimony, $100 per month against alimony arrearages, $900 per year for a required life insurance policy on the husband's life, $136.60 per month for medical insurance for both of them, and $3,000 per year for the required survivorship annuity.