600 So.2d 1274 (1992)
William Alton MANNING, Husband, Appellant,
v.
Genevieve V. MANNING, n/k/a Genevieve V. Foster, Wife, Appellee.
No. 91-1937.
District Court of Appeal of Florida, First District.
June 23, 1992.
Lawrence C. Datz, Datz, Jacobson & Lembcke, Jacksonville, for appellant.
Lester Makofka, Jacksonville, for appellee.
SHIVERS, Judge.
The former husband appeals the trial court's two final orders denying his motion *1275 to modify final judgment of dissolution of marriage, and holding him in contempt for failure to pay the full amount of child support after his application for modification. The parties' marriage was dissolved by final judgment entered November 1, 1983. In 1990, the former wife, appellee here, petitioned for an increase in child support and her petition was granted by order entered November 14, 1990. At that time, the former husband was employed in a temporary capacity as an electrician at Container Corporation of America (CCA) earning about $18 per hour. He was fired on December 2, 1990. His petition for modification of child support, filed on December 21, 1990, was premised solely on his having lost the job at CCA after the November modification. Appellant's petition was denied by order rendered May 21, 1991. That order states in pertinent part: "The Court finds that while the former husband's change in financial circumstances has been substantial, material and involuntary, he has not demonstrated to the satisfaction of this Court by the greater weight of the evidence that such change is permanent in nature as he is required to do." Appellant contends that the evidence does not support the trial court's finding that his changed financial circumstances were not permanent.
As a condition of temporary employment at CCA, the husband had to pass a physical examination. He failed the exam and was fired. Although the husband had never suffered from any back problems, the X-rays revealed "a minor anomaly with partial sacralization of L5." According to CCA's doctor, the husband's "screening x-ray of his lumbo-sacral spine" was deemed abnormal. The doctor's letter states in pertinent part: "Conclusion: If PPG neg, the primary reason for not recommending him for work would be his screening x-ray of his lumbo-sacral spine. At that time would recommend that he have complete LS series performed and if this was ok, would consider changing my work recommendation." The husband testified that he attempted to have the LS series of X-rays performed by a physician in Callahan, Florida, but that the doctor's machine was not working then. The husband was unemployed then and had no health insurance. He estimated the cost of LS X-rays at about $200, an amount that he deemed unaffordable, given that he had no guarantee of employment with CCA even if his test results were "OK."
Appellant applied for unemployment compensation and presented unrefuted evidence of the Unemployment Compensation Division's record detailing his search for a job during the period December 23, 1990, to January 6, 1991. Cargill, Inc. (Cargill) eventually hired him to work 40 hours per week at $9 per hour, or about half his pay at CCA. Unlike CCA, Cargill offered the husband permanent employment and the possibility of promotions, provided health insurance, and did not require a physical examination. As to why he accepted a lower-paying job, the husband testified that a guaranteed job at Cargill was preferable to unemployment or to the higher-paying but uncertain job situation at CCA.
Appellant argues that the trial court erred in requiring proof that his change in financial earnings was permanent. In In re Marriage of Johnson, 352 So.2d 140 (Fla. 1st DCA 1977), we stated that a child support reduction "may be warranted upon changed circumstances which are substantive, material, involuntary and permanent in nature." Id. at 141 (emphasis added). Although dicta in Johnson, the requirement that changed circumstances be permanent to justify a child support reduction is now settled Florida decisional law. See, e.g., Thomas v. Thomas, 589 So.2d 944, 947 (Fla. 1st DCA 1991) (on motion for clarification); Conklin v. Conklin, 551 So.2d 1279 (Fla. 4th DCA 1989); O'Brien v. O'Brien, 407 So.2d 374 (Fla. 1st DCA 1981); Bish v. Bish, 404 So.2d 840 (Fla. 1st DCA 1981). This Court in Bish stated that a permanent change of circumstances is a "fundamental prerequisite" to modification. See 404 So.2d at 840-41.
*1276 None of the cases presented by the parties specifically delineate what time periods or particular circumstances show permanence, and the determination of what situations are permanent in nature must necessarily be based on a reasonable examination of the facts of each case. The record demonstrates that, after losing his job at CCA, appellant took steps to secure other employment offering comparable pay. However, the work search record, completed for unemployment compensation purposes and offered into evidence by appellant, covers only a two-week span, from December 23, 1990 to January 6, 1991, a relatively short time period given the husband's heavy burden to show a permanent change. See Conklin, 551 So.2d at 1279. In testimony, the husband acknowledged that, although he took the lower-paying job at Cargill because the job market was poor, Cargill offered opportunities for advancement. "Another day Cargill offered me a permanent job with health insurance and possible promotions and a possibility of in six months going somewhere." (T-32)
Appellant's acceptance of a lower-paying permanent job at Cargill, in exchange for certain benefits as well as the possibility of an improved financial situation within six months, suggests that even he believed his circumstances could improve within a relatively short time period. While the former husband argues that he had no guarantee of returning to his former wage when he petitioned for a reduction in child support, the short period of time between appellant's loss of the job at CCA and his petition for modification falls short of any showing of permanence.
As to whether a new series of back X-rays would have improved appellant's job prospects, the record shows that a satisfactory test performance would have given the physician the opportunity to re-evaluate appellant's work readiness. This is evident from the letter of W.C. Solomon, M.D., to the office of employee relations at CCA. Based solely on appellant's prior performance on the physical exam, and without the additional tests, CCA was unwilling to offer him permanent employment. Given those circumstances, appellant's failure to submit to more tests foreclosed him from being rehired by CCA.
We do not conclude that taking more tests would have automatically bettered appellant's chances of securing a higher-paying job. The mere opportunity for the physician to reconsider appellant's medical record would not have guaranteed him employment. For that reason, the trial court's order rendered on May 21, 1991, is incorrect in stating that if appellant had submitted to a complete series of back X-rays, and the results were "essentially negative," then the doctor would withdraw the "no work" recommendation and would recommend appellant for employment.
Regarding appellant's child support obligations, the parties agreed that he paid at least $500 per month after the monthly amount was increased to $800 in the modification order filed on November 19, 1990, prior to his job loss at CCA. The former husband argues that, because his financial change was permanent, his petition for modification should have been granted retroactive to the filing date.
Under the facts of this case, we find that although the trial court did not err in refusing to modify the former husband's child support obligations because the reduction in income had not been shown to be permanent, it was nevertheless an abuse of discretion not to grant the former husband "emergency" or temporary relief from that obligation. McConnell v. McConnell, 552 So.2d 237 (Fla. 1st DCA 1989).
The former husband is entitled to an order temporarily reducing child support payments during such time as it is reasonably necessary for him to reestablish himself. We reverse the finding of contempt.
REVERSED and REMANDED.
BOOTH and WEBSTER, JJ., concur in part and dissent in part, with opinions.
*1277 BOOTH, Judge, concurring in part and dissenting in part.
The basis for reversal, that the trial court abused its discretion in not granting the former husband "emergency" or temporary relief from the child support obligations, was not raised as an issue on appeal. True, appellant's petition for modification of, "and emergency relief from," the child support obligations was denied below. But, on appeal to this court, appellant does not contend that the trial court erred in denying the motion for emergency relief. This court should not address issues not raised or grant relief not requested. Further, since appellant has failed to show that the trial court abused its discretion in denying the requested relief, the orders below should be affirmed.
WEBSTER, Judge, concurring in part and dissenting in part.
I concur in the conclusion that it was an abuse of discretion not to grant the former husband the "emergency," or temporary, relief he requested from his child support obligation; and in the reversal and remand for that reason. See, e.g., Kinne v. Kinne, 599 So.2d 191 (Fla. 2d DCA 1992) (former husband engaged in new employment at substantially reduced income entitled to have support obligation reduced until income substantially increases, as long as he has acted in "good faith"); McConnell v. McConnell, 552 So.2d 237 (Fla. 1st DCA 1989) (reduction in income based upon a "good faith" change in employment warrants at least a temporary reduction in support obligation); O'Brien v. O'Brien, 407 So.2d 374 (Fla. 1st DCA 1981) (evidence of slump in former husband's business due to depressed economy sufficient to justify temporary, 5-month, reduction in support obligation). However, I am unable to agree that the trial court did not abuse its discretion when it denied the former husband's petition to modify the final judgment of dissolution of marriage by reducing his child support obligation. Therefore, I dissent from that conclusion.
On November 14, 1990, based upon evidence presented at a hearing held a week earlier, the trial court granted the former wife's request and increased the former husband's monthly child support obligation from $475.00 ($237.50 per child) to $800.00 ($400.00 per child). At the time of the hearing, the former husband had been employed for approximately one week as an electrician with Container Corporation of America. (Previously, the former husband had worked for approximately three years as an electrician for Manning Electric, a family business which ceased operations in 1990.) The job with Container Corporation paid $18.00 per hour, and the former husband worked a 40-hour week. From this, the trial court found that the former husband's net monthly income was $2,434.00. (When the child support obligation had initially been set at $475.00, the former husband's net monthly income was $1,609.00.) However, the former husband's job with Container Corporation was temporary  he had been assured employment for only six months; and even this was contingent upon his successfully passing a physical examination.
Less than three weeks after the trial court had increased the former husband's child support obligation from $475.00 to $800.00 per month, the former husband was terminated by Container Corporation because he had failed his physical examination. On December 21, 1990, the former husband filed his petition requesting modification of, "and emergency relief from," the recently increased child support obligation.
After he had been terminated by Container Corporation, the former husband applied for, and received, unemployment compensation, as a condition of which he was required diligently to seek employment. It is undisputed that he did so, contacting a significant number of potential employers. After approximately two weeks of looking for work (over the Christmas holiday period), the former husband was offered, and accepted, employment with Cargill, Inc., as *1278 an electrician. The job entailed a full, 40-hour week. However, the rate of pay was only $9.00 per hour.
On May 14, 1991, a hearing was held on the former husband's petition for modification of, "and emergency relief from," the increased child support obligation. The former husband testified that he was still employed by Cargill, earning $9.00 per hour for a 40-hour week. (His net monthly income was approximately $1,283.00.) He also testified that, although he felt that the results of the physical examination which had been the cause of his termination by Container Corporation had been erroneous, he did not attempt to correct the error for several reasons. He would have been required to pay the costs of a new physical examination out of his own pocket. He was told that even if he successfully passed a new examination, there was no assurance that he would be rehired. Moreover, even if he were to be rehired, the job would be temporary, with no guarantee of permanent employment. In contrast, the Cargill job was permanent. Cargill made health insurance available (and contributed to its cost); whereas, health insurance had not been available at Container Corporation because of the former husband's temporary status. Finally, Cargill offered the potential for future advancement. The former husband said that he had hoped to find a job at a higher rate of pay, but that the job market was such that there was simply nothing else available.
From the evidence, the trial court concluded that the former husband had established that his "change in financial circumstances ha[d] been substantial, material and involuntary." However, the trial court concluded, further, that the former husband had failed to establish "by the greater weight of the evidence" that the change in his financial circumstances was "permanent in nature." Because the former husband had failed to establish that his substantial adverse change in financial circumstances was "permanent in nature," the trial court denied the request for modification of, or relief from, the child support obligation imposed in November 1990. (On July 3, 1991, relying upon the findings and conclusions it had reached when it had denied the former husband's request to modify his child support obligation, the trial court adjudged the former husband in contempt of court because of an arrearage of $1,950.00 which had accrued regarding the child support obligation; and ordered the former husband either to pay the entire arrearage within six days or to report to jail to serve a 30-day sentence for contempt of court.)
I agree that, rightly or wrongly, "the requirement that changed circumstances be permanent to justify a child support reduction is now settled Florida decisional law [citations omitted]." Ante, at 1275. However, the power to modify the amount or the terms of a parent's child support obligation in circumstances such as those presented by this case is conferred by statute. § 61.13(1)(a), Fla. Stat. (1989). The statute grants authority to modify the amount or the terms of a child support obligation "when there is a substantial change in the circumstances of the parties." It does not read that modification requires a permanent "substantial change in the circumstances of the parties." Therefore, the gloss of permanency placed on the statutory language must, I believe, be read to mean merely that whether the change in circumstances is permanent is one factor to be considered in determining whether or not the change in circumstances is "substantial"; i.e., whether the change in circumstances is material, meaningful, significant. To attribute any other intent to the gloss of permanency added by the courts to the language of the statute would, I believe, constitute judicial legislation.
I agree, also, that the determination of whether a change in circumstances is sufficiently permanent to qualify as a factor supporting a conclusion that the change is "substantial" is one which must be made on a case-by-case basis. However, I believe *1279 that case law does provide guidance to assist in the analysis. The test is essentially one based upon common sense  can the change in circumstances reasonably be expected to continue for the foreseeable future? If the answer to this question is in the affirmative, permanency has been established. See, e.g., Vilas v. Vilas, 153 Fla. 102, 13 So.2d 807 (1943); Haas v. Haas, 552 So.2d 252 (Fla. 4th DCA 1989); Bradley v. Bradley, 347 So.2d 789, 790 (Fla. 3d DCA 1977) (Hubbart, J., concurring). (To apply literally the concept of permanency would impose upon the moving party an insurmountable evidentiary burden.) Applying this test to the facts of the present case, I am unable to find any competent evidence to support a conclusion that the former husband's change in circumstances  his reduction in income  was not reasonably likely to continue for the foreseeable future.
If the issue is, as I believe it to be, whether the former husband's reduction in income can reasonably be expected to continue for the foreseeable future, I fail to see the significance of the facts that the former husband filed his petition some three weeks after he was terminated by Container Corporation; and that he was fortunate enough to find employment with Cargill slightly more than a month after he had been terminated by Container Corporation. At the time of the hearing on his petition, the former husband had been with Cargill (at the same hourly wage) for more than four months; and at the time of the hearing on the former wife's motion for contempt, the former husband had been with Cargill (at the same hourly wage) for some six months. All of the evidence suggested that this was likely to continue for the foreseeable future. Moreover, while it is true that the former husband testified that he had accepted employment with Cargill, in part, because the possibility of advancement had been held out to him, there was no evidence to suggest that any such promotion was likely to occur in the foreseeable future or that, if one did occur, it would double his hourly wage.
The effect of the trial court's refusal to grant the former husband's request for a reduction in his child support obligation is dramatic. After deducting federal income tax and Social Security withholding, the former husband is left with $1,303.00 in monthly net income. From this figure one must subtract the increased monthly child support obligation of $800.00, leaving $503.00. However, at the time the parties' marriage was dissolved, the former husband had been ordered to pay additional child support, consisting of all health insurance premiums and all medical and dental expenses of the children not covered by insurance, and all premiums necessary to maintain $75,000.00 in insurance on his life. The former husband remains subject to these additional child support obligations which, according to the evidence presented, amount to $265.00 per month. After subtracting this sum as well, the former husband is left with only $238.00 in net disposable income upon which to live. Nearly eighty-two percent of his net monthly income must be paid as child support!
The trial court having concluded that the former husband's reduction in income had been "substantial, material and involuntary," I am of the opinion that it was an abuse of discretion to deny the request to modify the child support obligation on the ground that the reduction in income had not been shown to be permanent. See, e.g., Vilas v. Vilas, supra (abuse of discretion to deny reduction of support obligation where uncontradicted evidence established income reduction of almost 50%); Thomas v. Thomas, 589 So.2d 944 (Fla. 1st DCA 1991) (abuse of discretion to deny modification where evidence regarding significant reduction in income was not discredited). Therefore, although I concur in the decision to reverse and remand, I would reverse outright, making it unnecessary to address the issue of "emergency," or temporary, relief.