662 So.2d 713 (1995)
Carolyn S. HAYDEN, Appellant,
v.
Roger C. Hayden, Appellee.
No. 94-0537.
District Court of Appeal of Florida, Fourth District.
September 27, 1995.
Order on Motion for Clarification November 15, 1995.
*714 Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for appellant.
Roger C. Hayden, Dayton, OH, pro se.
*715 WARNER, Judge.
After being twice held in contempt for failure to pay child support and alimony, the husband filed a petition for reduction of those payments. The trial court granted that request in its final judgment, although it gave the wife a judgment for alimony arrearages. The wife appeals claiming that the court erred in preventing the wife from inquiring into some pre-divorce stock transactions of the husband and the finances of the husband's second wife; that it erred in the amount of income imputed to the husband; and finally, that it erred in failing to enter a qualified domestic relations order to secure the arrearages judgment from the husband's pension. We agree as to the first two points and because we reverse as to them, we remand for further consideration of the entry of a qualified domestic relations order.
The parties were divorced in October 1990. In the final judgment of divorce, the court found that the husband had abandoned his family, and it ordered the husband to pay $1,250 in monthly alimony and $1,656 in monthly child support for his four minor children. The trial court found that the husband made $4,500 per month as president of a company owned by his brother and noted that the wife had not worked outside the home for nearly twenty years of the marriage. Less than three months later, the wife filed a motion for contempt for failure to pay child support and alimony, and the court found the husband in willful contempt of the order, requiring him to make specific payments to make up the arrearages. Again, in February 1992, the trial court found the husband in willful contempt for failure to pay child support and alimony and again the trial court ordered certain payments to be made to avoid incarceration.
A year later, the husband petitioned for modification, while still in arrears on his obligations. The husband claimed that he had lost his job with his brother's company, and even though he had an MBA degree, he was working as a warehouseman and insurance agent, making less than $1,000 per month. While he claimed that he had made an extensive job search, the court found his testimony not to be credible. Nevertheless, the court imputed income to the husband and found that his income was $2,000 per month. Although the wife was not working at the time of the hearing, the court imputed $1,400 per month in income to her. The trial court awarded her a judgment for the accumulated alimony and child support arrearages but refused to enter a qualified domestic relations order so that a pension of the husband's could secure the judgment.
During the proceedings, the wife sought to obtain financial records of the new wife, who had made substantial payments to the husband during their marriage to buy stock and to pay for the husband's attorney's fees. The trial court refused to allow the appellant to delve into the new wife's finances. In addition, the trial court also refused to allow the wife to inquire into the husband's pre-divorce finances regarding certain stock sold prior to the divorce. Under the facts of this case we hold both of these rulings to be error.
The wife's accountant obtained some information from portions of the new wife's tax returns which were produced. Based on the income interest reported, he estimated that the new wife had between $40,000 and $125,000 in income producing assets between 1991 and 1992. However, because she filed no income tax return in 1990, he surmised that she made below the minimum necessary to file a tax return. Moreover, it was established that the new wife did not work outside the home at least from the time she married the husband. It was also revealed that the husband made a gift of stock to her after their marriage and also transferred the title to his car to her. In other words, as the wife testified, the husband was transferring everything of his into the new wife's name to avoid his alimony and child support obligations.
In Condon v. Condon, 295 So.2d 681 (Fla. 1st DCA 1974), the court held that discovery of a new spouse's finances can be conducted only upon a clear and convincing showing that the remarried parent is unable to provide for the needs of the child out of her or his own funds. Relying on Condon, this court in Schneider v. Schneider, 348 So.2d 612 (Fla. 4th DCA 1977), reversed an order *716 allowing discovery by the former wife of the new wife's finances in the husband's action for modification, stating:

Unless there is some showing on the part of the wife that the husband terminated or reduced his employment in order to keep from paying alimony and that he was relying upon his present wife for his living expenses in completion of the scheme, we can see no possibility of relevance concerning the present spouse's income.
Id. at 613 (emphasis supplied).
The emphasized language sets the standard of relevance for discovery of the present spouse's income. To that we would add that if there is a showing that the husband has transferred significant assets to the wife's name, and as a result has no assets of his own with which to satisfy his support obligations, then the present wife's finances are relevant to the question of the ability of the husband to pay alimony and child support to the former spouse. We cannot condone the voluntary and deliberate divestment of assets by the husband when he is obligated to pay support to his former wife and children. In the instant case, the showing was made that over the five years of the marriage between the husband and his new wife, he did just that. It is relevant to the proceeding for the wife to show the value of the new spouse's assets acquired from the husband.
We also hold that on the facts of this case, the trial court erred in refusing to allow the wife to question the husband on the stock transactions which occurred just prior to the divorce. The husband filed a financial affidavit in the proceedings in 1990 which listed the subject stock as having a value of $16,000. Yet the month after the affidavit was filed, he sold those stocks for $296,000, declaring capital gains of $164,000. What happened to the sale proceeds is relevant to the husband's petition for reduction of alimony and child support and his present ability to pay. While the trial court has broad discretion in determining what evidence to hear regarding assets of the parties in a modification proceeding, see Dixon v. Moody, 352 So.2d 950 (Fla. 1st DCA 1977), given the disappearance of this substantial amount of money, the trial court should have allowed the wife to make limited inquiry into these pre-divorce stock transactions so that the court could be fully informed as to the husband's finances.
We also reverse that portion of the order imputing income to the husband in an amount not supported by the evidence. The final judgment of divorce determined that the husband was earning $4,500 per month in his brother's company. He was terminated from that position after the divorce, but the trial court found that the termination was his own doing. Moreover, the court determined that the husband's testimony concerning his job search was not credible, nor was his search diligent. Without any other facts which we can find in the record, the court determined that the husband could earn $2,000 net per month.
Where a former husband has an ability to earn if he so desires, the trial judge should impute an income to him according to what he could earn by the use of his best efforts to gain employment equal to his capabilities, and on that basis enter an award of alimony as if the husband were in fact earning the income so imputed. In such a situation, an award of alimony entirely exhausting the husband's actual income may be a proper exercise of the trial judge's discretion. Maddux v. Maddux, 495 So.2d 863 (Fla. 4th DCA 1986). See also Avery v. Avery, 548 So.2d 865 (Fla. 4th DCA 1989).
The Second District in Kinne v. Kinne, 599 So.2d 191 (Fla. 2d DCA 1992), articulated a "good faith" test:
[I]f the ex-husband who is engaged in a new type of employment with substantially reduced income did not deliberately reduce his income to avoid compliance with his alimony obligation and is acting in good faith to increase his income back toward its previous level, his alimony obligation should be reduced to be more commensurate with his current ability to pay.
Id. at 194. As the trial court found that his job search had not been diligent and his testimony was not credible, the husband did not satisfy the good faith test. Given the *717 trial court's findings as to his lack of good faith, the amount of income imputed to the husband, which was substantially below his pre-divorce earnings, is not supported by any evidence offered in the proceedings.
Finally, the trial court's refusal to enter a qualified domestic relations order so that the wife's alimony arrearages can be secured by the husband's pension may be reconsidered on remand. A QDRO is, in pertinent part, an order relating to a former spouse's child support or alimony rights which entitles that former spouse to receive benefits payable under a pension plan. 29 U.S.C. § 1056(d) (West 1985 & Supp. 1995). See also Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 838, 108 S.Ct. 2182, 2190, 100 L.Ed.2d 836 (1988); Ablamis v. Roper, 937 F.2d 1450, 1453 (9th Cir.1991) (amendments were to safeguard the financial security of widows and divorcees).
A QDRO need not be part of the judgment in an action [e.g., for dissolution]; a party can obtain a QDRO as an aid to enforcing a previously entered judgment. Eady v. Eady, 624 So.2d 360 (Fla. 1st DCA 1993) (citing Rohrbeck v. Rohrbeck, 318 Md. 28, 566 A.2d 767, 774 (1989)). It may be entered to enforce an alimony or child support award.
Whether to enter a QDRO is within the discretion of the trial court as is any other enforcement mechanism for alimony or child support. In the final judgment the trial court stated:
The Former Wife claims she should be entitled to a Qualified Domestic Relations Order (QDRO), based upon a claim that the Former Husband has for pension rights with the Bristol Myers Squibb Company. The Court concludes the Former Wife has failed to establish that claim and the entitlement to the (QDRO).
We are unsure what the trial court meant by its finding. The husband admitted the existence of the pension (which he had failed to reveal at the time of the original divorce) and that he would receive payments from it in 1998. The wife showed a pattern of willful refusal by the husband to comply with his alimony and child support obligations and the divestment of assets to his new wife. Nevertheless, it does not appear that there was any evidence as to the amount of the benefits available under the plan. The court might have denied the claim on this basis, or simply determined that it would not divest the husband of his pension as that was his only asset. We leave it to the trial court on remand to reconsider this issue in light of any additional evidence which may be offered on the husband's assets as a result of our opinion. Moreover, since we are remanding for reconsideration on a number of issues, the trial court may take additional competent evidence as to the payments which can be expected from the plan. In that regard, we find no error in excluding the wife's proffered testimony as to the plan's benefits.
Reversed and remanded for further proceedings consistent with this opinion.
DELL and PARIENTE, JJ., concur.

ON MOTION FOR CLARIFICATION
PER CURIAM.
The appellant has asked for clarification as to who, on remand, has the burden to prove the value of the pension and payments for purposes of determining whether to issue a QDRO order. As we said in Childers v. Childers, 640 So.2d 108, 109 (Fla. 4th DCA 1994), "[t]he person with the pension obviously has access to the facts and figures necessary for the trial court to make a determination of the value of benefits... ." While we were determining equitable distribution in that case, the necessary information regarding the pension for purposes of a QDRO order also can come from the person with the pension. In the case of a QDRO, the value of the plan is not required to be calculated. What is necessary is the amount of payments under the plan, the amount to be deducted from each payment, and the term of those payments plus other information required by statute. The person holding the pension is in a better position to obtain this information. If necessary, the court could order its production by the husband. If the husband is interested in avoiding expense, he could confirm the accuracy of notarized documents the wife received from the pension administrator *718 before the first trial but which were kept out at the husband's objection.
DELL, WARNER, and PARIENTE, JJ., concur.