768 So.2d 1102 (2000)
Robert A. RAHN, Appellant,
v.
Marcia RAHN, Appellee.
No. 2D99-1520.
District Court of Appeal of Florida, Second District.
May 17, 2000.
Rehearing Denied October 10, 2000.
*1103 M. Katherine Ramers of Ramers & Stephens, P.A., Dunedin, for Appellant.
John A. Schaefer, Sharon E. Krick, and Robert Potter, Clearwater, for Appellee.
*1104 PER CURIAM.
Robert A. Rahn, the former husband, appeals the trial court's order denying his supplemental petition for modification of alimony. Because the trial court did not abuse its discretion in determining that the former husband failed to show a change in circumstances sufficient to warrant a modification of alimony, we affirm.
This case involves a twenty-two-year marriage between the former husband and Marcia Rahn, the former wife, which the trial court dissolved in 1990. The trial court's final judgment equitably distributed the parties' assets and liabilities, including awards to the parties of their current vehicles and respective interests in their retirement plans. The judgment also required the former husband to pay $1,200 monthly alimony to the former wife after the former husband satisfied a second mortgage on the marital residence. The former husband subsequently satisfied the mortgage and paid alimony of $1,200 monthly until he exhausted his severance pay in January 1998, six months after he was terminated from his employment.
The former husband is currently fifty-nine years old and holds a bachelor of science degree in electrical engineering and a masters degree in business administration. He worked for the same defense contractor (the employer) as a field engineer or field engineer supervisor for nearly thirty-two years. After twenty-seven years with the employer, he accepted a transfer from Florida to Alabama for one year. One year later, he accepted another transfer, this time to Connecticut. The former husband has since resided nearby in Massachusetts with his second wife. At the time of these transfers, the former husband was given the option of a one-year layoff or the transfer to a new location with no supervisory duties and less pay. His gross pay fluctuated from a high of $88,500 in 1990 to a low of $68,798 in 1996.
In 1997, the employer offered the former husband the option of employment termination with severance pay or a transfer to New York for a job guaranteed only for one year. Because the former husband's second wife, a certified public accountant, earned $65,000 per year in a secure job and both preferred to remain in Massachusetts where the former husband was active in the community, he turned down the job transfer. The former husband subsequently sought local employment by searching newspaper advertisements, registering with employment agencies, and mailing at least sixty resumes to prospective employers. After seven months with no offers, the former husband filed a supplemental petition for modification of alimony. He alleged a substantial change in circumstances consisting of his involuntary termination from employment and his inability to obtain comparable employment. He also alleged that the former wife's need for alimony had decreased. At the hearing on the petition, the former husband testified that because he had no job offers in nine months, he was now willing to move to Kentucky or Pennsylvania to obtain employment, although he preferred to obtain employment near his current residence. However, he limited his job search to jobs which would pay $30,000 or more per year.
The trial court denied the former husband's petition, finding that the former husband's layoff was voluntary and only temporary. Additionally, the trial court found that any decrease in the former wife's need for alimony did not support modification because it was modest and any increase in her income was contemplated at the time of trial. The trial court also found that the former husband had substantial assets from which to pay alimony. It noted that his retirement plan was valued at $330,656 and that he owned four vehicles. The court explained that, although Florida case law holds courts should not consider marital assets in determining alimony in an initial dissolution proceeding or when there has been an *1105 involuntary termination from employment, the same factors do not apply when an obligor voluntarily leaves his employment. In that instance, the trial court determined that it was entitled to look to all of the obligor's assets in determining his ability to pay the alimony. Thus, the court found that the former husband had the ability to pay alimony at the former rate of $1,200 monthly.
On appeal, the former husband argues that the trial court erred in making the following findings to support its denial of his petition for modification: (1) that his loss of employment was neither permanent nor involuntary; (2) that the former wife's decrease in her expenses which resulted from contributions from a companion did not warrant modification; (3) that the former wife's increase in income did not warrant modification; and (4) that the former husband had the ability to pay.
In order to justify a modification of alimony, the moving party must show: (1) a substantial change in circumstances; (2) that the change was not contemplated at the final judgment of dissolution; and (3) that the change is sufficient, material, permanent, and involuntary. See Pimm v. Pimm, 601 So.2d 534, 536 (Fla.1992). First, the former husband argues that his loss of employment was permanent and involuntary under the "good faith test." The "good faith test" has been applied to allow for temporary relief from alimony based on a temporary change in circumstances. See Whetstone v. Whetstone, 710 So.2d 749, 750 (Fla. 4th DCA 1998) ("This type of relief differs from a permanent modification, which requires the showing of a permanent change in circumstances."). See also Kinne v. Kinne, 599 So.2d 191 (Fla. 2d DCA 1992); McConnell v. McConnell, 552 So.2d 237 (Fla. 1st DCA 1989). Under the "good faith test," a court will grant a temporary reduction or suspension in alimony when the obligor has suffered a reduction in income without deliberately seeking to avoid paying alimony and is acting in good faith to return his income to its previous level. See Kinne, 599 So.2d at 194; McConnell, 552 So.2d at 239.
The former husband's argument that the trial court erred in failing to apply the "good faith test" in consideration of a permanent modification of alimony is misplaced. There is no evidence that the former husband ever requested a temporary modification of alimony. In fact, the former husband has maintained throughout trial and in the course of this appeal that his loss of employment is permanent in nature. Accordingly, the trial court did not err in failing to apply the "good faith test" in this case.
Furthermore, we cannot say that the trial court abused its discretion in finding that the former husband's loss of employment did not warrant a permanent modification of alimony. The circumstances surrounding the former husband's loss of employment are similar to those in cases involving voluntary retirement. In those cases, although the act of retirement in itself appears to be permanent and voluntary, courts look to whether the voluntary retirement is reasonable in determining whether to permanently modify alimony. See Pimm, 601 So.2d at 537. The reasonableness of the retirement is determined according to the surrounding circumstances, including the age, health, and motivation of the obligor; the obligor's field of employment; the normal age of retirement for those in that field; and the effect on the obligee. Id.
Applying those factors to the instant case, we conclude that the former husband's decision not to accept the job transfer was reasonable. He is a fifty-nine-year-old professional who has already endured two transfers, the first from Florida to Alabama, and the second from Alabama to Connecticut. He testified that he declined a third transfer, this time to New York, because his wife did not want to leave her job again and because of his numerous ties to the community. The transfer would only allow for one more *1106 guaranteed year of employment before he would probably be required to transfer again. Additionally, although the former wife testified that she was unemployed at the time of dissolution, she admitted that she had the ability to return to a teaching job which would pay $35,000 per year. She also testified that she currently had a roommate who was contributing to her expenses. Under such circumstances, we cannot say that refusing such a transfer would be unreasonable.
However, we conclude that the former husband's assertion that his loss of employment is permanent was unreasonable. The former husband holds two college degrees in electrical engineering and has thirty-two years of experience as a defense contractor. He is fifty-nine years old and there was no testimony that his health is suffering. Under these circumstances and in the present job market, the former husband should be able to locate employment somewhere in Connecticut, Massachusetts, Kentucky, or Pennsylvania. Furthermore, there is no reason why the former husband should limit his job search to opportunities with salaries above $30,000 per year. Because the former husband should be able to readily locate employment, the trial court did not err in refusing to permanently modify alimony.
Second, the former husband argues that the former wife's decrease in her expenses which resulted from contributions from a companion supports modification as a substantial change in circumstances. The former husband is correct that the economic impact of cohabitation may be considered in a petition for modification of alimony. See Springstead v. Springstead, 717 So.2d 203, 204 (Fla. 5th DCA 1998); Dibartolomeo v. Dibartolomeo, 679 So.2d 72, 72-73 (Fla. 4th DCA 1996). However, to support a modification of alimony, a change in circumstances must be substantial. See Pimm, 601 So.2d at 536. In this case, the evidence established that the former wife's monthly expenses had been reduced from $2,647 to $2,452, a reduction of only eight percent. Because of the size of the reduction, the trial court did not err in finding that it was not substantial.
Third, the former husband challenges the trial court's finding that the former wife's increase in income did not warrant modification as a substantial change in circumstances not contemplated at the time of dissolution. In this case, the former wife's income as a school teacher increased over eight years from $23,590 with benefits to $35,000 without benefits. We conclude that the trial court's finding that the parties contemplated that the former wife would receive yearly increases for experience and cost of living is supported by the evidence.
Fourth, the former husband argues that the trial court erred by finding that he had the ability to pay based on his retirement plan and ownership of four vehicles. In this case, the trial court did not need to address the former husband's ability to pay because it found that his unemployment did not warrant modification. However, in the event that the former husband successfully moves for modification in the future, we note that the trial court may only consider the former husband's postdissolution contributions to the retirement plan in determining his ability to pay. See Bain v. Bain, 687 So.2d 79, 81 (Fla. 5th DCA 1997). Additionally, the trial court may not consider the vehicle awarded to the former husband during equitable distribution. See Diffenderfer v. Diffenderfer, 491 So.2d 265, 267 (Fla.1986).
Affirmed.
PARKER, A.C.J., and CASANUEVA and SALCINES, JJ., Concur.