PER CURIAM.
This is an appeal from orders rendered in a case where a former husband sought to modify his alimony obligation. We affirm.
Patrick and Leona Malone were divorced in 1996 after a 27-year marriage. The marital settlement agreement granted the wife permanent alimony of $2,500 per month after she turned 55; once the husband retired, the alimony was to be reduced by the amount the wife received from the husband’s retirement plans. At the time of the 1996 divorce, the husband was a successful worker’s compensation attorney. In 1995, he earned $120,000 in salary and another $30,000 to $70,000 in corporate distributions.
In 2004, the former husband moved for a downward modification of alimony. The former wife counterpetitioned for an alimony increase. The case was referred to a magistrate for an evidentiary hearing. The magistrate recommended that both the petition and counterpetition for modification be denied and that the husband should be held in contempt for nonpayment of alimony.
After a hearing on the former husband’s exceptions, the circuit court entered a detailed order, which we adopt:
In order to be entitled to a permanent modification of his alimony obligation, ... the Former Husband’s burden [is] “to prove an involuntary, substantial, material and permanent change in his financial circumstances, not contemplated in the final judgment of dissolution.” Dervishi v. Dervishi, 905 So.2d 932 (Fla. *1244 4th DCA 2005). The court may apply a “good faith test” in those situations where the change in the obligor’s financial circumstances is temporary. Id. at 934. In order to pass the “good faith test,” the Former Husband must not only incur a reduction in income but must also act in good faith to return his income to its previous level. Rahn v. Rahn, 768 So.2d 1102, 1105 (Fla. 2d DCA 2000).
Former Husband contends that as a result of legislative changes to Florida’s Worker’s Compensation laws in 2003, his income as an attorney practicing in that area has been significantly decreased, a fact noted by the Magistrate and well supported by the record. That does not end the inquiry however. Former Husband cannot choose to remain underemployed but must make a good faith effort to find comparable employment.
At a minimum, those efforts should include some attempt to expand and adapt his practice to areas outside the workers compensation field or close his practice and find work in another firm where he could put his years of experience to good use. It appears from the Court’s own view of the trial testimony that he did neither. Instead, his early efforts consisted of little but placing his girlfriend and her daughter on the payroll. He moved his practice to a less desirable location in a much smaller second floor office, with no elevator access for clients. Phone service with clients was limited to four days a week. Not surprisingly, both his practice and his income shrank. Nonetheless, he continued business as usual in the vain hope that the courts would reverse the legislative enactments.
Former Husband’s belated efforts to find other employment locally were perfunctory at best. He interviewed with only one firm and sent out no resumes. He did not retain any employment agency to assist him in his job search. Despite his interest in doing government work and his twenty years of legal experience, he did not inquire of any local governmental or State agencies as to any employment opportunities.
Former Husband’s backup plan was to buy a home in Georgia and find more reasonable employment there. Toward that end, he sold his Florida residence for in excess of $800,000 and purchased a new home in Georgia, mortgage free, in which he deeded a one-half interest to his girlfriend. Because the house is within commuting distance of Atlanta, Former Husband anticipates he can obtain a job with the federal government, possibl[y] doing Social Security work. Yet, Former Husband has done very little in the way of actually soliciting employment in Georgia, aside from registering on the internet with an employment agency and a newspaper in Atlanta. Two weeks prior to the hearing, he sent his resume to an Atlanta headhunter service. To date, he has no viable prospects and has had no job interviews. More importantly, Former Husband is not a member of the Georgia Bar and is uncertain to what extent, if any, he can even practice his profession without first passing the Georgia Bar exam and becoming licensed in Georgia. It appears Former Husband has no plans to take the Bar exam. If he is unable to practice law in Georgia, it is highly unlikely he will be able to obtain comparable employment. *1245 refused to modify the husband’s petition for alimony where he attended only three interviews and did not go in person to apply for a job. Moreover, his decision to start his own business rather than seeking comparable employment was found to have further contributed to his being voluntarily underemployed. Also, in Robinson v. Robinson, 597 So.2d 415 (Fla. 4th DCA 1992), the Fourth District affirmed the trial court’s denial of the husband’s petition for modification where the husband failed to take advantage of available job opportunities and conducted only a cursory job search. In Kovar v. Kovar, 648 So.2d 177, 178 (Fla. 4th DCA 1994), the trial court was permitted to impute income to an underemployed husband whose job search was inadequate, consisting of only a few resumes having been sent out and only a couple of interviews. The cases relied upon by the Former Husband are factually inapposite inasmuch as they involved husbands who acted in good faith to return their income to prior levels and who made diligent searches for comparable employment.
*1244 Based on the foregoing, it is clear that the Former Husband has made only a token effort toward returning his income to its previous level and has not made a good faith attempt to find comparable employment. Instead, he has made poor business choices that have further negatively impacted his earning ability. In Vazquez v. Vazquez, 922 So.2d 368 (Fla. 4th DCA 2006), the appellate court
*1245 Since the record supports the trial court’s finding that the Former Husband was voluntarily underemployed, we find no abuse of discretion in the court’s implied imputation to the Husband of sufficient income to satisfy his alimony obligation. See Vazquez, 922 So.2d at 373; Pribble v. Pribble, 800 So.2d 743, 746 (Fla. 5th DCA 2001). The generous financial benefits the Former Husband bestowed on his girlfriend undercut his claim that he could not meet his alimony obligation.

Affirmed.

SHAHOOD, GROSS and MAY, JJ., concur.