37 So.3d 877 (2010)
Kathy M. WILSON, Appellant,
v.
James S. WILSON, DVM., Appellee.
No. 2D08-3184.
District Court of Appeal of Florida, Second District.
April 21, 2010.
Rehearing Denied July 7, 2010.
*878 Gilberto Perez of Henderson, Franklin, Starnes & Holt, P.A., Fort Myers and Cynthia L. Greene of Greene Smith & Associates, P.A., Miami, for Appellant.
*879 Robert L. Donald of the Law Offices of Sherman & Donald, Fort Myers, for Appellee.
LaROSE, Judge.
Kathy M. Wilson appeals the trial court's order modifying Dr. James S. Wilson's alimony obligation. The trial court did not abuse its discretion by finding changed circumstances, reducing alimony to $8000 per month, and applying the modified alimony amount retroactively. Accordingly, we affirm.[1]

Factual Background
The parties divorced in 2000, after a twenty-eight-year marriage. The final judgment of dissolution approved a marital settlement agreement in which the Former Husband agreed to pay $11,000 a month as taxable permanent alimony to the Former Wife. At that time, the Former Husband's veterinary clinic was fully staffed with three full-time veterinarians (including the Former Husband), a part-time veterinarian, and support personnel. The Former Husband's total income in 1999 and in 2000 was $339,000.
In 2005, the two other full-time veterinarians, both of whom had been long associated with the clinic, wanted to buy an interest in the practice. They could not agree on terms with the Former Husband. Eventually, they quit and opened their own practice.
Because of a shortage of veterinarians, the Former Husband could not find replacements for the departed full-time veterinarians. The remaining part-time veterinarian worked full-time for a short term. She soon left to join another clinic where she could work a less demanding schedule. The Former Husband was the sole veterinarian left at the clinic. The Former Husband worked an untenable schedule. He worked fifteen hours per day and maintained weekend office hours. He saw no relief for the foreseeable future.
In 2006, Veterinary Clinics of America (VCA) offered to buy the practice for $2.3 million, a price very near that of the business valuation the Former Husband secured about a year earlier. VCA also proposed that the Former Husband work for VCA for two years on commission, for approximately forty hours per week. After two years, his employment with VCA could extend for five additional one-year periods by mutual agreement; thereafter, he could continue on an at-will basis. VCA also insisted that upon leaving VCA the Former Husband would not compete with VCA within a twenty-mile radius for five years. The Former Husband accepted the offer. No one disputes that the Former Husband received adequate consideration for the practice. In 2007, however, his income from VCA was approximately $120,000. His total income, which included investment income and property appreciation, was approximately $250,000.
In 2007, the Former Husband petitioned to modify his alimony obligation.[2] He was fifty-seven years old; the Former Wife was fifty-six. In granting the petition in *880 March 2008, retroactive to April 11, 2007, the trial court found, in part, as follows:
[T]he evidence demonstrates that [the Former Husband] made a prudent decision to sell his veterinarian practice. If he continued to operate the practice himself, he risked damaging his health and a sudden decline in his income if he became unable to work. This would have been detrimental to both parties. The evidence presented establishes that obtaining associates for a veterinarian practice has been very difficult for VCA as well as for [the Former Husband]. Although [the Former Husband] now has less income from working in his practice, he now has substantial investment income and a more stable and secure future. The 20 mile radius for the non-compete clause allows [the Former Husband] to continue to practice at another clinic in the SW Florida area until retirement age, or to continue on a contract basis with VCA at his former clinic.
. . . .
The Court finds that [the Former Husband's] present earning ability is about 35% less than the income he earned at the time of the entry of the Final Judgment. Reducing alimony by 35% would result in a reduction of monthly alimony to $7,150. The percentage that alimony bears to the gross income at the time of the entry of the Final Judgment is about 39%. Applying that same percentage to current income would result in a reduction of alimony to $8,125 per month. According to the alimony calculation worksheet provided by the Former Husband, $8,000 per month in alimony would furnish the parties roughly equal cash flow (actually the [F]ormer Wife would have about $200 more per month) based on their current incomes.
The Court finds that significant amounts of the [F]ormer Wife's expenses on her financial affidavit were for gifts, retirement savings, future repairs to her house, and other items which are not proper considerations for determining alimony. The Former Wife's need for alimony is less than the $11,000 per month previously established.

Analysis
Section 61.14, Florida Statutes (2007), provides in relevant part as follows:
(1)(a) When the parties enter into an agreement for payments for, or instead of, support, maintenance, or alimony ... or when a party is required by court order to make any payments, and the circumstances or the financial ability of either party changes ..., either party may apply to the circuit court ... for an order decreasing or increasing the amount of support, maintenance, or alimony, and the court has jurisdiction to make orders as equity requires, with due regard to the changed circumstances or the financial ability of the parties or the child, decreasing, increasing, or confirming the amount of separate support maintenance, or alimony provided for in the agreement or order....
. . . .
(7) When modification of an existing order of support is sought, the proof required to modify a settlement agreement and the proof required to modify an award established by court order shall be the same.
"In considering modification the court can and should take into consideration all factors and contrast the total circumstances at the time of the original order with all the current circumstances." Scott v. Scott, 285 So.2d 423, 425 (Fla. 2d DCA 1973); see Pimm v. Pimm, 601 So.2d *881 534, 536 (Fla.1992). Generally, to justify an alimony modification, the moving party must establish: (1) a substantial change in circumstances; (2) the change was not contemplated at the time of the final judgment of dissolution; and (3) the change is sufficient, material, permanent, and involuntary. Pimm, 601 So.2d at 536; Eisemann v. Eisemann, 5 So.3d 760, 762 (Fla. 2d DCA 2009); Antepenko v. Antepenko, 824 So.2d 214, 215 (Fla. 2d DCA 2002); Rahn v. Rahn, 768 So.2d 1102, 1105 (Fla. 2d DCA 2000). We examine the trial court's ruling for an abuse of discretion. See Leonard v. Leonard, 971 So.2d 263, 266 (Fla. 1st DCA 2008); see also Thyrre v. Thyrre, 963 So.2d 859, 861-62 (Fla. 2d DCA 2007) ("`Retroactivity is the rule rather than the exception ....'") (quoting DeSantis v. Smith, 634 So.2d 796, 797 (Fla. 4th DCA 1994)).
There is no quarrel that an uncontemplated substantial change in circumstances occurred. The change is material and sufficient. See, e.g., Antepenko, 824 So.2d at 215 (noting that a thirty-eight percent change in circumstances met the substantial change in circumstances test). The Former Wife argues that the trial court should have denied modification because the income reduction was neither involuntary nor permanent.
Courts require that a change in circumstances be involuntary to ensure that the payor spouse does not deliberately avoid his support obligations. See Vazquez v. Vazquez, 922 So.2d 368, 372 (Fla. 4th DCA 2006). The payor spouse must act in good faith to retain income that would allow him to meet his financial obligations. See Laliberte v. Laliberte, 698 So.2d 1291, 1293 (Fla. 5th DCA 1997) (explaining that change in circumstances was not voluntary where the former husband did not quit his medical practice in Florida to voluntarily reduce his income, but rather because of business necessity and economic downturns; actions were not deliberate and were not done to avoid paying alimony and child support); Thomas v. Thomas, 589 So.2d 944, 947 (Fla. 1st DCA 1991) (discussing the "clean hands doctrine"; where former husband's business was anything but thriving and he tried to find alternative employment as a lawyer and worked with a consultant and head hunter, he exhibited good faith nature of his job search). To be sure, the Former Husband sold his practice to VCA. However, the realities of his practice compelled him to seek an alternative to what had become a grinding practice model. The record supports the trial court's conclusion that business exigencies prompted the sale, the consideration received was reasonable, the sale enabled the Former Husband to continue working as a veterinarian until retirement age, and the sale proceeds ensured long-term security for both the Former Wife and the Former Husband.
There is no evidence that the Former Husband manipulated his finances to deprive the Former Wife of support. Rather, the Former Husband responded to unexpected business circumstances that presented a dearth of reasonable alternatives for solutions. The Former Husband needed to continue in practice. He was nearing retirement age and realistically could not maintain the current practice pace. The sale to VCA was a fitting solution to the dilemma.
Although the Former Husband did not retire, we observe that involuntariness of income loss may no longer be a bright-line requirement for alimony modification. In Pimm, the supreme court held that voluntary retirement is a change of circumstances that may be considered, together with other relevant factors, in determining whether to modify alimony if the retirement is reasonable. 601 So.2d at 537 *882 (approving this court's opinion in Pimm v. Pimm, 568 So.2d 1299, 1299-1300 (Fla. 2d DCA 1990), and disapproving Servies v. Servies, 524 So.2d 678 (Fla. 1st DCA 1988), and Ward v. Ward, 502 So.2d 477 (Fla. 3d DCA 1987), to the extent they are inconsistent with Pimm). In Rahn, we extended the reasoning of Pimm to hold that, under the circumstances, the former husband's decision to accept a layoff rather than a transfer for a job guaranteed for only one year was reasonable. 768 So.2d at 1105-06. However, the former husband did not demonstrate that his loss of employment was permanent. Id. at 1106. We concluded that, with two engineering degrees and thirty-two years of experience as a defense contractor, he "should be able to readily locate employment" nearby. Id. at 1106. Accordingly, the trial court had not abused its discretion in denying a modification of alimony in Rahn.
Here, the trial court's finding that the Former Husband's decision to sell his practice was "prudent" satisfies the "reasonable" standard of Pimm and Rahn concerning the voluntary loss of income. Moreover, the record sufficiently establishes that the Former Husband's new-found circumstances were permanent. Prospects of locating employment at his previous income level were bleak. He could not continue the practice pace he endured prior to selling his practice. We cannot conclude from our record that the veterinarian shortage had abated to such an extent that he could open a new clinic of his own. The five-year noncompete agreement requiring him to locate any new practice at least twenty miles away and not to solicit former clients made it doubtful that he could quickly return to a higher income.
We also cannot say that the trial court abused its discretion in reviewing the parties' current financial situations. See Pimm, 601 So.2d at 537; Scott v. Scott, 285 So.2d 423, 425 (Fla. 2d DCA 1973). The Former Wife no longer had a mortgage payment. Her most current financial affidavit showed, compared to her affidavit at the time of the divorce, a $2500 monthly deduction for a capital fund for her house, a $500 monthly deduction for the future college education of a grandchild, a deduction of over $300 a month for charitable giving, and large monthly increases for clothing expenses, gifts for family and friends, and retirement account contributions. The trial court did not err in finding a number of the items unnecessary and concluding that the Former Wife did not need alimony of $11,000 per month.

Conclusion
We find no abuse of discretion by the trial court. The Former Wife may, of course, seek upward modification if future circumstances demand. We do recognize that she would bear the burden to demonstrate entitlement to such relief. See § 61.14(1)(a); Chambliss v. Chambliss, 921 So.2d 822, 824 (Fla. 2d DCA 2006).
Affirmed.
WALLACE, J., Concurs.
CRENSHAW, J., Dissents with opinion.
CRENSHAW, Judge, Dissenting.
I respectfully dissent and would reverse the order under review because the trial court failed to apply the correct legal standard in granting the Former Husband's petition for modification of alimony. "[A]n abuse of discretion standard is not appropriate where the trial judge fails to apply the correct legal standard...." Nichols v. Nichols, 907 So.2d 620, 622 (Fla. 4th DCA 2005). "Where a trial judge fails to apply the correct legal rule ... the action is erroneous as a matter of law. This is not an abuse of discretion. The appellate *883 court in reviewing such a situation is correcting an erroneous application of a known rule of law." Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla.1980) (emphasis added). Because I do not find the trial court's order sufficient to support a permanent modification of alimony, I would reverse.
To justify a modification of alimony, the Former Husband was required to prove the following: (1) a substantial change in circumstances; (2) the change was not contemplated at the time of the final judgment of dissolution; and (3) the change is sufficient, material, permanent, and involuntary. Chambliss v. Chambliss, 921 So.2d 822, 824 (Fla. 2d DCA 2006). Here, in its order modifying alimony, the trial court failed to apply the third standard. There is no dispute that a substantial change in circumstances occurred that was not contemplated at the time of the final judgment of dissolution. However, the trial court made no finding that the Former Husband's substantial change in circumstances was permanent and involuntary. Instead, the trial court concluded the following:
The Court finds that the evidence demonstrates that [the Former Husband] made a prudent decision to sell his veterinarian practice. If he continued to operate the practice himself, he risked damaging his health and a sudden decline in his income if he became unable to work. This would have been detrimental to both parties. The evidence presented establishes that obtaining associates for a veterinarian practice has been very difficult for VCA as well as for [the Former Husband]. Although [the Former Husband] now has less income from working in his practice, he now has substantial investment income and a more stable and secure future. The 20 mile radius for the non-compete clause allows [the Former Husband] to continue to practice at another clinic in the SW Florida area until retirement age, or to continue on a contract basis with VCA at his former clinic.
(Emphasis added.) Here, the trial court's finding that the Former Husband made a "prudent decision," coupled with the trial court's speculation over what "would have been" had the Former Husband continued to operate his practice, does not constitute a finding that the Former Husband's change in circumstances was permanent and involuntary. In fact, the trial court's reference to the Former Husband's two-year noncompete agreement with VCA negates a finding that the change in circumstances is permanent because once the Former Husband fulfills his two-year commitment to VCA, he is free to become employed elsewhere or renegotiate a contract with VCA for more favorable terms.
Based upon the prerequisites required for a modification of alimony, I conclude the Former Husband's substantial change in circumstances was neither permanent nor involuntary. I do not agree with the majority's conclusion that the sale of the Former Husband's practice was involuntary, yet voluntary "in the abstract." In fact, the Former Husband's testimony at the hearing demonstrates that the sale of his practice and resulting decrease in income were wholly and completely voluntary:
[Former Wife's counsel]: No one forced you into this sale, correct?
[Former Husband]: No.
[Former Wife's counsel]: You were in good health at the time?
[Former Husband]: Yes.
[Former Wife's counsel]: And you still remain in good health?
[Former Husband]: Yes.
[Former Wife's counsel]: And the primary reason for your sale was you *884 didn't want to work as hard as you had been working?
[Former Husband]: Correct.
[Former Wife's counsel]: Now, you entered into an agreement with VCA for two years?
[Former Husband]: To work [forty] hours a week, yes.
[Former Wife's counsel]: And you have an option to renew that contract after the two years?
[Former Husband]: Yes.
Despite the trial court's finding that the Former Husband made a "prudent decision" to sell his practice, and the majority's position that the Former Husband was compelled to seek an alternative to what had become a grinding practice model, the Former Husband's testimony demonstrates that he negotiated the terms of the sale and exercised the option to voluntarily sell his practice to VCA.
The trial court did not address the Former Husband's change in circumstances as permanent and involuntary and therefore failed to apply the appropriate legal standards. Accordingly, I would reverse the order modifying the Former Husband's alimony.
NOTES
[1] We need not address in detail the Former Wife's arguments that the trial court abused its discretion in computing the Former Husband's income. Those issues present no basis for reversal and we affirm the trial court's rulings.
[2] We note that the parties did not request, nor did the trial court consider, a temporary alimony reduction. A temporary reduction in alimony requires that the obligor "is acting in good faith to return his income to its previous level." Rahn v. Rahn, 768 So.2d 1102, 1105 (Fla. 2d DCA 2000) (citing Kinne v. Kinne, 599 So.2d 191, 194 (Fla. 2d DCA 1992); McConnell v. McConnell, 552 So.2d 237, 239 (Fla. 1st DCA 1989)).