DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PEDRO SUAREZ,**
Appellant,

v.

**CANDICE MURPHY SUAREZ,**
Appellee.

No. 4D18-1148

[November 13, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Dale C. Cohen, Judge; L.T. Case No. FMCE12-002163.

Amy D. Shield and Roger Levine of Shield & Levine, P.A., Boca Raton, for appellant.

Owei Z. Belleh of The Belleh Law Group, P.L.L.C., Fort Lauderdale, for appellee.

MAY, J.

The former husband appeals an order terminating alimony, re-calculating child support, and modifying time-sharing. He argues the trial court erred in: (1) terminating alimony because the evidence did not support that decision and the court did not make the statutorily-required findings; (2) applying the gross-up method to calculate child support; and (3) modifying time-sharing. We agree in part and reverse in part. We remand the case to the trial court for further proceedings consistent with this opinion.

The former husband and wife entered into a marital settlement agreement ("MSA"). The MSA divided the former couple's major assets and created a schedule for the former wife's alimony payments to the former husband. The MSA provided for each parent to spend equal amounts of time with the children; the former wife agreed to pay nearly all childcare expenses.

After the former husband refused to follow a provision regarding the division of assets, the former wife moved to have him held in contempt.

The former husband responded by moving to have the former wife held in contempt for failing to pay alimony, child support, and follow the MSA regarding assets. The former wife then moved to modify alimony, child support, and the timesharing agreement.

In support of the modification, the former wife testified that a decline in her title business resulted in decreased income, causing her to downsize from seven employees to one. The title company relied on short sales. The former wife claimed rising property values caused a decrease in the number of short sales and a 75% reduction in earnings from each sale. She testified that her major client, responsible for about 85% of the title company's business, opened its own title division and stopped using her company's services. She claimed her efforts to maintain the business were also hindered by marketing regulations implemented shortly before the MSA, and trade regulations implemented shortly after. Her marketing efforts were limited to hosting luncheons and teaching a class.

The impact of the title business' decline and the collapse of another business was substantiated by the former wife's tax returns and income estimates. She testified her title business' annual income declined almost 60%. This caused a significant decline in her annual income. The former wife admitted this decline did not include personal expenses she ran through her title business.

Although the MSA provided for equal timesharing, that never occurred. The former wife testified the former husband's work schedule caused the children to spend almost 90% of their time with her. The former husband further disrupted the time-sharing arrangement when he had an altercation with his son, resulting in the former wife filing an ex parte motion for full custody of the children.

The couple later amended the timesharing agreement to allow the daughter to spend time with her father. Even that time became limited due to the father's work schedule and the daughter's activities.

The MSA assigned the former wife full financial responsibility for the children's expenses, except for medical, camp, and extracurricular expenses the couple would split. She collected and sent the former husband receipts for extracurricular activities and made him aware of medical costs, but he failed to pay his share of those costs. The former wife admitted she did not get the former husband's permission before committing to extracurricular activities, but claimed that he failed to review the suggested activities and did not object to them.

2

The trial court found the 75% decline in the former wife's business resulted from the loss of her biggest client, the decline in market value of short sales, and the change in business regulations. These factors created a substantial, material, permanent, and involuntary change in circumstances meriting termination of the former wife's alimony obligation.

The trial court modified timesharing to reflect the couple's actual practice, which consisted of the daughter spending 30% of her time with the former husband. It ordered reunification therapy between the former husband and the son. It imposed a child-support obligation on the former husband to make up for changes in the former wife's income and the modified timesharing. The trial court denied the former husband's motions to hold the former wife in contempt.

The former husband now appeals.

### ***The Alimony Issue***

We have a mixed standard of review of the order modifying alimony. *Bauchman v. Bauchman*, 253 So. 3d 1143, 1146 (Fla. 4th DCA 2018). "The trial court's legal conclusions are reviewed de novo." *Id.* "The trial court's factual findings are reviewed for abuse of discretion and should be affirmed if supported by competent, substantial evidence." *Id.*

The former husband argues the trial court erred in terminating the former wife's alimony obligation because: (1) the court's finding of a substantial, material, unanticipated, involuntary, and permanent change in circumstances is not supported by competent, substantial evidence; (2) the court failed to make the findings required by section 61.08(2), Florida Statutes (2018); and (3) the court failed to rule on the former wife's unpaid alimony obligation.

The former wife responds the trial court correctly adhered to the statutory requirements of section 61.14, Florida Statutes (2018), and competent and substantial evidence supported the court's finding that the former wife's change in circumstances were substantial and material, unanticipated, and involuntary.

"'In considering [alimony] modification, the court can and should take into consideration all factors and contrast the total circumstances at the time of the original order with all the current circumstances.'" *Wilson v. Wilson*, 37 So. 3d 877, 880 (Fla. 2d DCA 2010) (citation omitted). To modify alimony, the movant must show:

1) a substantial change of circumstances;

2) that the change was not contemplated at the time of the final judgment; and

3) that the change is sufficient, material, involuntary, and permanent in nature.

*Mendes v. Mendes*, 947 So. 2d 450, 452 (Fla. 4th DCA 2006). "[M]odification may not be based upon factors affecting income known to the parties at the time a final judgment is entered." *Id.*

In *Mendes*, the trial court denied the husband's motion for modification because his change in income was anticipated due to the mercurial nature of the real estate market. *Id.* We affirmed the order denying modification, but noted the court's reliance on the husband's knowledge of possible fluctuations in his industry affecting his income was "misplaced." *Id.* Although the court knew the husband's income could fluctuate, "the character of the actual change and consequences to income" were not known beforehand. *Id.*

Here, the trial court correctly found the former wife had a substantial change in income to warrant modification. Like *Mendes*, the former wife worked in the real estate industry. However, it was not a mere fluctuation in the industry, but an unanticipated substantial decline in income due to the loss of a major client, changed regulations, and the fluctuation in the market. Those changes were involuntary and permanent. *See Wilson*, 37 So. 3d at 882. And despite best efforts, the former wife was unable to return to the income she previously enjoyed. We see no error in the court's findings, which were supported by competent, substantial evidence.

Despite the evidence supporting the trial court's decision to terminate the former wife's alimony obligation, the trial court was required to make statutorily required findings, pursuant to section 61.08(2), Florida Statutes. Once a party moving for alimony modification provides substantial, permanent, and unanticipated change in circumstances, "a trial court must consider and make specific factual findings for each of [the] factors [within section 61.08(2)] . . . ." *Addie v. Coale,* 179 So. 3d 534, 536 (Fla. 4th DCA 2015).

Section 61.08(2) enumerates the factors to be considered:

(a) The standard of living established during the marriage.

4

(b) The duration of the marriage.

(c) The age and the physical and emotional condition of each party.

(d) The financial resources of each party, including the nonmarital and the marital assets and liabilities distributed to each.

(e) The earning capacities, educational levels, vocational skills, and employability of the parties and, when applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment.

(f) The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party.

(g) The responsibilities each party will have with regard to any minor children they have in common.

(h) The tax treatment and consequences to both parties of any alimony award, including the designation of all or a portion of the payment as a nontaxable, nondeductible payment.

(i) All sources of income available to either party, including income available to either party through investments of any asset held by that party.

(j) Any other factor necessary to do equity and justice between the parties.

§ 61.08(2)(a)-(j), Fla. Stat. (2018).

"The failure to provide these required findings may . . . constitute reversible error." *Geoghegan v. Geoghegan*, 969 So. 2d 482, 485 (Fla. 5th DCA 2007). However, courts will not reverse where the record contains competent, substantial evidence to support the need and ability to pay alimony. *McCann v. Crumblish-McCann*, 21 So. 3d 170, 171 (Fla. 2d DCA 2009).

The trial court orally found:

5

> The circumstances which has caused [the former wife's company] to drastically lose income are, in fact, permanent. . . . . And these changes are involuntary as the former wife has no control over the fees that the business collects.

The record is barren of any other consideration of the factors enumerated in section 61.08(2). The court only addressed whether the former wife's change in circumstances were substantial, unanticipated, and material. The trial court further failed to address: (1) whether the former wife had an ability to pay; and (2) whether the former husband had any need for any amount of alimony payments. *Henry v. Henry*, 191 So. 3d 995, 998 (Fla. 4th DCA 2016) ("Awards of retroactive alimony must be based on need and ability to pay."). These lack of findings require us to reverse.

In addition, the trial court consolidated the issues of alimony and contempt, declaring "contempt is still on the table with respect to nonpayment of alimony." The trial court then declared, "we need to redo the math to see how much former [h]usband is owed for the month that he didn't receive the alimony." But, when the court issued its order terminating the former wife's alimony obligation effective upon the order date, it remained silent on the retroactive alimony owed to the former husband. These omissions also require us to reverse. *See Vitro v. Vitro*, 122 So. 3d 382, 385 (Fla. 4th DCA 2012).

### *Timesharing*

The former husband next argues the trial court abused its discretion when it modified the timesharing agreement because there was insufficient evidence supporting a sufficient, material, permanent, involuntary change in the former wife's circumstances and it failed to consider the best interest of the children. The former wife responds there was sufficient evidence of a material, permanent, and involuntary change in circumstances warranting the modification of timesharing.

"[A] time-sharing determination can only be modified if there has been a 'showing of a substantial, material, and unanticipated change in circumstances' and a finding 'that the modification is in the best interests of the child.'" *Korkmaz v. Korkmaz*, 200 So. 3d 263, 265 (Fla. 1st DCA 2016) (quoting § 61.13 (3), Fla. Stat.).

A court cannot modify a timesharing schedule without a "determination that the modification is in the best interests of the child." § 61.13 (3), Fla. Stat. (2018). Although the lower court "need not independently address

6

each of the listed factors" used to evaluate children's best interest, "[it] must make a finding that the timesharing schedule is in the best interest of the children." *Davis v. Davis*, 245 So. 3d 810, 812 (Fla. 4th DCA 2018).

Here, the trial court failed to make the requisite finding of whether the timesharing change would be in the best interest of the children. The court noted the limited time (30%) the former husband spent with the children and that he was estranged from his son. The court ordered reunification therapy and joint counseling sessions. But, the trial court fell short of finding whether the 30% timesharing was in the best interest of both children. Within the trial court's oral pronouncement, it briefly mentioned the issue between the former husband and son, but that was the extent of the discussion. As we held in *Davis*, we must reverse because of this omission.

### *Child Support*

The former husband argues there was insufficient evidence to modify the child support agreement and the trial court improperly applied the gross-up calculation method. The former wife responds the evidence established a substantial, material, permanent, and involuntary change in circumstances to support the child support modification.

We review child support modification orders for an abuse of discretion. *Woolf v. Woolf*, 901 So. 2d 905, 911 (Fla. 4th DCA 2005). "Where the essential findings necessary to calculate child support pursuant to the guidelines are missing from the record, the appellate court cannot properly perform its review function." *Johansson v. Johansson*, 270 So. 3d 426, 427–28 (Fla. 4th DCA 2019).

Section 61.30, which governs retroactive child support, provides:

> (b) Whenever a particular parenting plan, a court-ordered time-sharing schedule, or a time-sharing arrangement exercised by agreement of the parties provides that each child spend a substantial amount of time with each parent, the court shall adjust any award of child support, as follows:
>
> 1. In accordance with subsections (9) and (10), calculate the amount of support obligation apportioned to each parent without including day care and health insurance costs in the calculation and multiply the amount by 1.5.
>
> 2. Calculate the percentage of overnight stays the child spends

with each parent.

3. Multiply each parent's support obligation as calculated in subparagraph (1) by the percentage of the other parent's overnight stays with the child as calculated in subparagraph (2).

4. The difference between the amounts calculated in subparagraph (3) shall be the monetary transfer necessary between the parents for the care of the child, subject to an adjustment for day care and health insurance expenses.

5. Pursuant to subsections (7) and (8), calculate the net amounts owed by each parent for the expenses incurred for day care and health insurance coverage for the child.

6. Adjust the support obligation owed by each parent pursuant to subparagraph (4) by crediting or debiting the amount calculated in subparagraph (5). This amount represents the child support which must be exchanged between the parents.

7. The court may deviate from the child support amount calculated pursuant to subparagraph (6) based upon the deviation factors in paragraph (a), as well as the obligee parent's low income and ability to maintain the basic necessities of the home for the child, the likelihood that either parent will actually exercise the time-sharing schedule set forth in the parenting plan, a court-ordered time-sharing schedule, or a time-sharing arrangement exercised by agreement of the parties, and whether all of the children are exercising the same time-sharing schedule.

8. For purposes of adjusting any award of child support under this paragraph, "substantial amount of time" means that a parent exercises time-sharing at least 20 percent of the overnights of the year.

§ 61.30, Fla. Stat. (2018).

Here, the trial court used the gross-up method for both children despite its finding that the son was not spending any overnights with the former husband from March 2015 to December 2017. The court acknowledged the need to recalculate child support in light of that fact, but then

incorrectly used the gross-up method, which is available only if the child spends at least 20% of the overnights with the parent. We must therefore reverse the trial court's child support determination.

For the reasons expressed above, we reverse and remand the case for further proceedings consistent with this opinion.

*Reversed in part and Remanded.*

TAYLOR and FORST, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***